2015-06 Habas Sinai against the United States. Mr. Simon Good morning, may it please the court. I'm David Simon representing the affluent Habas Sinai in 2017 the Commerce Department applied a CBD rate of fourteen point oh one percent to Habas as Adverse facts available for Habas's failure to report benefits under Turkey's duty drawback program The source of that AFA rate was an export tax rebate that commerce had investigated back in 1986 Here we argue that commerce failed to establish its to follow its established hierarchy in Selecting this rate as AFA and it failed to corroborate its selection as required by the statute As Regards rate selection the statute lists the sources from which commerce may select an AFA rate To make its selection Commerce uses a long-standing Hierarchical approach that we summarized on page two of our reply. Mr. Simon. This is just well I I have a general background question for you. Hmm. I I was wondering if you could tell me please What is a duty drawback? And what is the duty drawback plan? It's just kind of generally What is it that was at issue in this case? I I I understand that it might not be I might not need to know it to resolve the issues in this case But I I don't I don't know what one is. So I'd like somebody to tell me Okay Haber Habas Manufactures rebar to make its rebar it imports among other things steel billets into Turkey And it pays an import duty on those billets either in actual cash at the time of that Importation or on some kind of account system with Turkish customs When it exports its finished goods, that is the rebar it receives from the Turkish government a rebate of the duties it paid on the input so in effect the exportation wipes clean the liability for the for the import tariffs the import duties or Rebates them if they've been paid in cash Okay, thank you. Mm-hmm So regarding rate selection commerce used its long-standing hierarchical approach In our brief to the agency Habas proposed that commerce use as AFA an identical program from another case Namely a duty drawback under Turkey's so called KKDF law, which was another tax on imported inputs Commerce has repeatedly held that the KKDF drawback is identical to a duty drawback Counsel Yeah, this is this is Judge Rada. You don't you don't just you're not disputing that commerce had basis on which to Apply an AFA rate. No, it seems to me that you're your argument. You're Your your position is that they just simply chose a wrong basis on which to establish what the rate would be That's right. They didn't follow their hierarchy and they do They They established the rate on on the the third aspect of that hierarchy There's no rate available the highest non-denominous rate for a similar program based on the treatment of the benefit Which we're talking about the same benefit here In another CVD proceeding the both CVD proceedings involving the same country So I don't think there's any dispute either is or that the The duty drawback program that we're talking about is from the same country that there's no dispute that this this particular Element of the program applies. Oh There is your honor respectfully In I thought maybe you were you arguing that that it applies. It just chose the wrong country and The wrong rate I Mean what it means when you say it applies This is an AFA case we don't dispute that AFA is appropriate We say that the commerce did not Run through its hierarchy properly because there is a step to rate Namely the KKDF rate It's a duty drawback program and it's Turkish and therefore it should have been applied You don't even get to step three in which commerce looks for a similar program Based on the treatment of the benefit Okay, that's what I was trying to clarify Trying to get you to get to the heart of your argument well The argument has two hearts. What one is whether the rate was properly corroborated and I will get to that but The first argument which really came up as a result of the government's Argument the first argument is whether the department Properly applied its hierarchy. It's an established practice. And so they're required to follow Simon This is judge. So, I'm sorry to interrupt you, but I Noticed that you didn't have your KD KKDF Argument in your blue brief. Could you tell me why you didn't forfeit your KKDF argument? When you didn't present this issue in your opening brief or before the CIT And the CIT several times says that you never provided an alternative and you didn't seem to provide this until your reply We had provided the alternative in our brief to the agency But you didn't provide it. You didn't provide it to the CIT and you didn't provide it to us your own brief, right? That's correct. And and you of course aren't looking at the case de novo and the issue arises because the government in its reply brief Says that we never provided an alternative for commerce to use and that's simply a misstatement of fact, and I had to run through that in order to Rebut the misstatement of fact, I don't think I've I've waived any anything. I argued it commerce you are looking at the case de novo and it was raised by the government and it was An incorrect statement But did you raise it at the CIT? No No, but again, we're looking at it de novo and CIT made a finding not supported by the record It was this was a marginal issue with the CIT, but yes, you're right We did not raise it there. If it's the main argument you're making here an appeal at oral argument You didn't even include it in your blue brief either, right? That's correct I mean I could switch the order of the argument and talk corroboration first But since in the statute the rate selection precedes Corroboration I'm going according to the statutory order. So the corroboration issue that that's something that was addressed similarly in a similar case and Ozdemir, is that the same issue? Okay. Yes. Mm-hmm. I Have another question for you now This is just again another background issue, but it's because Habas was the only mandatory Respondent, is that why there was no identical program match under 1677 ED 1a I Water one If there had been another mandatory respondent I don't know whether they would have reported drawback or not. So I really can't say Okay, but Habas was the only company and the reason it was the only company is because they had gotten a zero in 2013 in a previous case and so the petitioner started a new case in 2015 or 16 when this case was initiated So all the rest of the Turkish industry was under a CVD order but Habas was out because it had been found not to be Receiving substance If I can Come come back to the race election just for a minute, but was was the rate that ultimately was applied. Was it corroborated? No, it was not never I thought I thought that I thought that the rate that they applied as an AFA rate was a corroborated rate in a prior proceeding see we need proceed Well, it was it was investigated and found to exist back in 1986 in 1987 it was found to have been terminated but the fact that it's 3035 years old Even under the SAA The remoteness in time vitiates. It's Reliable, it's it's Corroboration, it's growing. That's really the that's really the argument you you've made to us in your briefs You're right that the rate that they applied is still And for that we know not just that it's stale It was that the behavior Underlying that rate can no longer exist because how about because the government of Turkey? Agreed to terminate that program when it signed on to the gas subsidies agreement So the program was terminated commerce found the program was terminated and the government continues to argue that Turkey's behavior in 1986 could somehow be relevant today, and I say it couldn't be because they agreed to terminate that behavior and Commerce acknowledged that in 1987 Okay, let's hear from the other side and we can pursue this aspect with them as well Thank You, Mr. Simon. Ms. Jensen Good morning, your honors and may it please the court There is only one issue on appeal here today for this court to consider and that is whether commerce Corroborated to the extent practicable and using information reasonably available to it the 14.01% adverse rate that it applied to Habash for failing to disclose a duty drawback program Habash benefited from During the period of investigation, but you're saying there's no issue that when that program was terminated in 1987 that it's stale No, that is not an issue that affects the Accuracy of the rate or whether or not commerce can select that rate To apply as adverse facts available Let's assume that it is an issue so that we can be sure that we've adequately explored it Well, the reason the length of the length of time that has passed since commerce have calculated that rate is not Controlling here is because commerce when it applies or selects among ASA rates it is confronted with limited Information on the record by way of a Respondent's failure to cooperate and its failure to put its own information on the record under which commerce would normally be able to do its calculation here Because Habash was the only mandatory respondent and it failed to disclose the duty drawback program Commerce was forced to look elsewhere to select a rate To apply to it and so commerce found itself looking at tier 3 of this hierarchy and up until Habash's reply brief I believe there was no dispute that commerce correctly looked at tier 3 of the hierarchy and had to look to another similar program Under which a countervailing duty had been calculated in a prior proceeding in Turkey and in doing so Commerce selected the highest non-de minimis rates from that proceeding and applied it here the corroboration requirement was met to the extent that Commerce could do that because it determined that rate The 14% rate to be both relevant and reliable and commerce explained this in its issues and decision memo appendix pages 133 to 134 Is there any is there any legal authority that requires that the that the rate or that the program that produces a rate still be enforced Not that I'm aware of your honor and Habash has really imported a new requirement that is not required by statute and that's under 1677 Or that commerce has ever engaged in for its practice of applying this hierarchical The the hierarchical method and selecting an adverse facts available rate if one were to read the statute as narrowly as Habash asked this court to do and to restrict commerce and what rates it can choose Commerce would really not be able to do to effectuate the purposes of the adverse facts available analysis with any kind of Success and the reason there is because as commerce has to move down through the hierarchy It is confronted with less and less information on the record before it There was very little information on this record for one for two reasons one We only had one mandatory respondent and that was Habash and to Habash Declined to cooperate in the proceedings and so there were there were no other respondents to look at So commerce was required to look elsewhere and if commerce could not use a rate that had been calculated Under a program that was subsequently terminated. It's unclear where else commerce could look to for a rate Select and with respect to the charge that the rate is stale or it's no longer good. That is just not That was flatly incorrect, but the program was terminated the rate remains Correct in that it reflects how a government of Turkey can calculated and applied taxes under a specific program to other producers in Turkey of a similar product in 1986 So the net rate has never been challenged by the courts or by By any party and so it remains a good rate Counsel, do you do you know whether that rate was verified in that prior proceedings? Yes, it was it. Yes. I mean it was the final calculated subsidy rate that was applied to the respondent And it was never challenged The commerce actually conduct verification in that case I mean I don't beyond Calculating the final rates. I don't know I don't have any more information than that But it would became part of the final it was the final determination on the administrative review of that Miss Jansen, this is Judge Stoll. What is your position on the live? Controversy issue raised by rebar in its red brief. I noticed that the government didn't take that same position We don't dispute that Habash has standing to bring this appeal, but we do believe that Contesting the rate itself is best left to the administrative review process and not before this court to get into the Actual rate that's been just been applied here but the reason we did not address that in the same way that Perhaps our attack has is that we understood the issue raised by a pabosh to be a singular one That is repeated a few times in his opening brief, which is Courts to adopt a maxim that Any rate selected by commerce To be applied as adverse facts available can never as a matter of law be corroborated If the program that gave rise to that rate has been terminated And as a as a maxim we disagree with that and as a matter of law that cannot be Correct, and we dispute that reading and so to the extent that is what pabosh is asking this court to do To create law. That's not quite fair. They said it was terminated over 30 years ago. Not that it was terminated yesterday But the formulation of the issue and this is been identified a few times in pabosh's briefing is The maxim that any terminated program cannot be used By commerce to select an adverse facts available rate their argument they emphasize how long ago it was terminated They do but they also And I would just invite the court to look at their reply brief at file page 19 Where they say simply that a terminated program cannot have probative values since no respondent can ever benefit under it And in their opening brief at files page 25 They say that terminated program cannot be relevant and reliable and any reading of the law allowing commerce to apply as adverse facts available Rate from a program that's been terminated is unreasonable. So that maximum standing on its own if that is the issue before this court, then we disagree with that and You know respectfully ask this court to uphold The Court of International Trade's opinion below I Would just like to if I may correct a statement by Mr. Simon that this court suggesting that this court can review the now New alternative rate that he puts on the record or he writes for the first time That's his reply brief because this court has de novo review Of course de novo review only applies to the issues that were raised And and identified by the Court of International Trade and the issues raised here There's nothing that's been put on this record in any of this litigation with respect to the KKBF rate and Although it was it can be found in Mr. Simon's rebuttal brief Before the agency that was the end of that argument and it was not taken by CIT And it was not considered here. And so we respectfully ask the court to Disregard that argument, but even if we were to consider that rate just on the merits There's a couple of problems with it. The first is that it does not comport with Habash's maximum that a terminated program can never serve as the basis for An ASA rate because the KKBF program was in fact terminated back in 2015 the rate calculated under it was calculated over 20 years ago as well So it doesn't it's not consistent with Habash's own Principle that it's seeking to impose on commerce Additionally in its reply brief and in support of the KKBF rate Habash cites to no record evidence that is no primary information that commerce would use in this administrative review to Consider whether or not that program was more similar than the 1986 program for purposes of an ASA rate Instead Habash thanks to a series of regulations other cases Administrative review proceedings elsewhere, but no primary or no record evidence is provided And so Habash itself cannot corroborate any of the information that it is proposing commerce now use for the first time here And finally if there are no Additional questions by the court. I would just like to Highlight the Requirement that the corroboration that commerce did do here with respect to the relevancy of the rate that it applied Because I believe Habash stated this standard as well in its briefing the relevancy Corroboration requirement at Tier three in the analysis requires commerce to look to a similar program and similarity is obviously a fact-based Inquiry, but it looks at similarity between the benefit that is provided by a foreign government to a producer in a specific program and Considers whether or not those benefits are similar for purposes of the program Habash suggests that the similarity Requirement it somehow informs how the rates are calculated. What is in the numerator and what is in the denominator? That is not the analysis and commerce explain this Thoroughly in its issues and decision memo at appendix page 133, so I Could just finish my answer I will happily end after that. Okay. No finish your sentence Thank you so commerce concluded that there was similarity here between the two programs in terms of the type of benefit and by that commerce means a grant a loan an indirect tax a Export rebate tax for example and doesn't get into the more technical aspects of how those are calculated by the government Here the calculated rate was based on information provided for another export tax rebate program and so it was found to be similar because it reflected the behavior of the government of Turkey with respect to a program that was so providing an export tax rebate Thank You Miss Jensen Shane you have three minutes Thank you, Your Honor. May it please the court? I'm John Shane here on behalf of the rebar trade action coalition or our tack Our tack agrees with the arguments made by DOJ council and I won't go over those points again here I'm going to focus my brief comments today on a separate argument namely There's no live case or controversy that would provide the court with article 3 Jurisdiction. I think it would be helpful to me if you were to help to explain Why this 30 year old rate is applicable Sure, I'd be happy to do that your honor. So so I think that the two factors that Should be looked at in terms of why that rate is still Appropriate is first. It's a reliable rate. I mean it would be great. Why is it reliable? I'm sorry, your honor. I didn't catch that last part. Did I hear you say it was a reliable rate? It was reliable in 1986 Well, I think I would argue your honor respectfully that it's still reliable because it was a rate calculated by the Commerce Department a final rate and therefore Should serve as a reliable indicator of an appropriate AFA rate. I would also say on the facts of that You see what's troubling me about all of this I didn't see any ways in your briefs or in the Governments or in Commerce's Explanations why the circumstances were identical now to those in 1986 and Therefore when that rate was terminated the following year by Turkey Why nonetheless Today, it's applicable. This is what's troubling me about the case. So any help you can provide I'd be interested Sure, your honor. I would say even though it was it was terminated 30 years ago. I believe it's still a Relevant indicator of an appropriate AFA rate. It was a rate that was calculated for In Turkey same country that's at issue here it is relevant also since it relates to a similar tariff drawback program and so There's nothing on the record that indicates Even though it is 30 years old, but that's not an appropriate rate. I think also just in terms of context here I think it's important to understand that the agency commerce was put in this position By the recalcitrant the failure to cooperate by the respondent And so if I may finish my answer your honor, please do and and so I think it's important to Understand the context here and the limited information on which commerce had to choose to Find an appropriate AFA rate under those circumstances. Thank you Okay. Thank you See mr. Simon you have a few minutes in rebuttal Thank you very much Mr. Shane just suggested that the 1986 program is a similar tariff drawback Program and in fact that mirrors commerce's languages to the program selection They claim that the 1986 program is relevant because it is quote another tariff rebate program and quote It was not the 86 export Tax rebate was a rebate of a bunch of taxes upon exportation of goods and those taxes included indirect taxes direct taxes a supplemental tax that if you had a Greater than a given amount of exports you got a cash benefit for that None of these are a tariff rebate. There is no commonality between the export tax rebate program and a duty drawback the only Possible commonality is that the words export tax rebate? kind of resemble the words duty drawback in writ large But in fact if one actually reads the 86 Commerce decision You will find that those programs those taxes that are rebated have nothing to do with a with a tariff rebate tariffs were not part of that and I come back also to I think it was judge Rainer that said Asked if the if there was verification in the 1986 case and if commerce had read the actual 1986 decision they would have seen that yes, there was verification I read it. We verified the responses of the government the Boris on group, etc between November 4 and November 16 1985 so the government is not reading the decisions. It's just picking things based on names Which is conclusory it's misleading and it just leads to a wrong result there is no similarity whatsoever in in in terms of the treatment of the benefit or in any other terms between the 1986 export tax rebate program and a duty drawback Commerce looks at duty drawbacks Turkish duty drawbacks all the time in every Turkish dumping case and it had looked at them in many of the Turkish CVD cases and always found them to be either de minimis or not counter available So commerce can't pretend it doesn't know anything about duty drawback It knows it quite well and when they say that that this duty drawback that wasn't recorded in by habas is similar to What they call another tariff rebate program they are simply misstating the facts and they're misled because they Believe they don't have to go back and look at these earlier decisions in which they they calculated rates that are being used as a FAA they think they can just pick a number and and use a name as Substantial evidence you have to go back and look at the decisions. We all know that as lawyers That completes what I have to say, so thank you very much Okay, thanks to counsel for both sides The case is taken under submission and that concludes this panel's argued cases for this morning